JACKSON CITY · BANK & TRUST COMPANY *v.* BLAIR.

1. Appeal and Error—Questions Reviewable—Directed Verdict.
   Errors alleged to have been committed in the selection of a jury are not discussed on appeal from directed verdict and judgment for plaintiff.

2. Pleading—Amendments—Discretion of Court.
   The matter of granting amendments to pleadings for furtherance of justice is largely within the discretion of the trial judge (CL 1948, § 616.1 *et seq.*).

3. Same—Amendments During Trial—Surprise.
   Only those amendments to pleadings should be allowed during the trial or hearing of a case which do not work to the

---

References for Points in Headnotes
[2, 4]  41 Am Jur, Pleading § 293.
[3, 4]  41 Am Jur, Pleading § 296.
[6]  3 Am Jur, Appeal and Error § 316.
[8–11]  10 Am Jur, Chattel Mortgages § 55.

.surprise or disadvantage of the adverse party (CL 1948, § 616.1 et seq.).

4. SAME—AMENDMENT—DISCRETION OF COURT—REPLEVIN—IDENTITY.
Trial court's refusal to allow amendment to answer during trial in replevin action whereby issue of identity of property would have been injected was not an abuse of discretion, especially when it contradicted the answer upon which plaintiff had a right to rely in preparing for trial (CL 1948, § 616.1 et seq.).

5. REPLEVIN—DESCRIPTION OF PROPERTY—EVIDENCE—AMENDMENT OF ANSWER—ISSUE OF IDENTITY.
Admission of testimony as to description of ensilage harvester, sought to be replevied from defendants who had purchased it from a retail dealer, mortgagor under plaintiff's duly-filed chattel mortgage, was not inconsistent with trial court's ruling denying defendant's motion to amend answer so as to inject issue as to identity of the mortgaged property (CL 1948, § 616.1 et seq.).

6. APPEAL AND ERROR—QUESTIONS REVIEWABLE—PLEADING.
Objections to sufficiency of pleadings, not raised in the trial court, are not considered on appeal.

7. REPLEVIN—CONSTRUCTIVE NOTICE—CHATTEL MORTGAGES.
Issue of lack of constructive notice of duly-filed chattel mortgage held, properly before trial court in action in replevin, in view of controversy as to description of the property involved.

8. CHATTEL MORTGAGES—DESCRIPTION—CONSTRUCTIVE NOTICE—ENSILAGE HARVESTER.
Description of an "A-2" ensilage harvester in duly-filed chattel mortgage held, sufficient to give defendants, as purchasers from a retail dealer in farm implements of a "2" ensilage harvester of the same brand, constructive notice of the mortgagee's right to seize the property after sale and sell it at a public sale.

9. SAME—DESCRIPTIONS—IDENTIFICATION.
Written descriptions of property in chattel mortgages are to be interpreted in the light of the facts known to and in the minds of the parties at the time and their privies and are not prepared for strangers, a subsequent purchaser being supposed to acquire a knowledge of all the facts, so far as needful to his protection and he purchases in view of that knowledge.

10. Same—Descriptions.

Descriptions of property in chattel mortgages do not identify of themselves but only furnish the means of identification by which the property described may be singled out.

11. Same—Description—Identification—Constructive Notice.

A subsequent purchaser or mortgagor has the burden of making reasonable inquiry beyond the description of property in a chattel mortgage itself if it furnishes a means of identification; and if such reasonable inquiry would reveal the complete identification, the filing of the chattel mortgage will constitute adequate constructive notice.

12. Appeal and Error—Questions Reviewable—Pleading—Evidence—Estoppel.

Issue of estoppel of plaintiff bank, as chattel mortgagee, from asserting any interest in ensilage harvester because mortgaged property was left in possession of the mortgagor, ostensibly for sale, after the mortgagor had defaulted on the note for which the mortgage had been given as security *held,* properly before Supreme Court where, notwithstanding that answer did not properly plead estoppel, in that facts concerning it were not fully pleaded, testimony forming the basis of the estoppel was admitted without objection and the issue of estoppel was discussed in the trial of the replevin action (Court Rule No 23, §§ 3, 5 [1945]).

13. Chattel Mortgages—Filing—Notice—Possession—Right to Sell.

Defendants, as purchasers of ensilage harvester covered by plaintiff's duly-filed chattel mortgage, from retail dealer as mortgagor, could not be bona fide purchasers for value without notice, since the filing constituted notice and where the mortgage does not authorize the mortgagor to sell the property of which he has the physical possession, such right to sell will not be implied merely from such possession.

Appeal from Jackson; Boardman (Harry D.), J, Submitted April 15, 1952. (Docket No. 88, Calendar No. 45,468.)   Decided May 16, 1952.

Replevin by Jackson City Bank & Trust Company against John Blair and another to obtain possession of personal property. Judgment for plaintiff on directed verdict. Defendants appeal. Affirmed.

*John S. Denton,* for plaintiff.

*Dahlem & Dahlem,* for defendants.

BUTZEL, J.   Jackson City Bank & Trust Company, plaintiff, made a loan to one Woodrow C. Artz of Munith, county of Jackson, Michigan, a licensed dealer in International Harvester Farm equipment, who on November 4, 1949, gave the bank a chattel mortgage on

"1  A-2  International Ensilage Harvester
 1  U-4  Power Unit Serial UBH 16206
 1  A-21  Power 7 Mower
 [1  No 30  Power Sheller W/Elevator]* Paid 1/6/50
 59  Bales Baler Twine"

The chattel mortgage was duly filed with the register of deeds for Jackson county on the following day.

The property was left in Artz's possession at Munith, Michigan.  He sold the harvester and other items to defendants Blair on September 12, 1950, but neither secured a discharge of the mortgage or a release of the property sold.  The invoice to defendants described the machine in question as "No. 2—Ensilage Harvester."  Upon default in payment, the bank sought payment from defendants, who then first learned of the mortgage.  We need not discuss the claim that no demand was made as John Blair, one of the defendants, admitted that he told plaintiff that defendants would not turn over the machine without a court order.  Plaintiff instituted the instant replevin proceedings and the trial judge instructed the jury to bring in a verdict giving plaintiff the right of possession.  A judgment was entered accordingly; defendants' motion for a new trial being

_____
* Struck out on original mortgage.

denied, the latter appeal. We shall not discuss appellants' claim of error in the selection of the jury, as the verdict was a directed one for plaintiff.

Defendants' answer read in part:

"They say that they bought the said harvester at retail from the said William C. Artz.

"* * * deny that the plaintiff has ever lawfully requested or demanded them to surrender possession of the said ensilage harvester.

"* * * They had lawful possession of the said machines * * * deny that plaintiff has any right, title or interest in the said ensilage harvester and that if it ever had any such right, title or interest in the said harvester, it is estopped from asserting such right, title or interest."

It appeared during the course of the testimony that defendants had bought a machine designated as a "No. 2—Ensilage Harvester" as evidenced by their invoice from Artz, and that the machine is designated in the mortgage as "1 A-2 International Ensilage Harvester." Counsel for defendants notwithstanding their answer, for the first time at the trial sought to claim that the description in the mortgage was not sufficient to identify the machine as the one plaintiff replevined. The court, however, held that the language in the answer made it clear that defendants raised no issue of identity. Counsel then moved to amend his answer, to clarify the language and raise the defense of identity. This motion was denied by the court on the basis that the issue of identity would raise an entirely new issue in the trial which would require the introduction of the witness Artz, whom plaintiff had not called in view of the admission in the pleading. In denying the motion for a new trial, the court referred to a conversation which took place prior to the trial in the judicial chambers. At the time it was stated that owing to defendants' an-

swer· admitting the identity of the machine, plaintiff would not call Artz, the mortgagor.· Defendants object to the consideration of such statements as they claim there was· no formal pretrial procedure as no reporter was present, no notes taken, no stipulations made. This is admitted. There. was sufficient justification for the decision of the trial judge without considering the unrecorded proceedings in his chambers. Under the statute of amendments, CL 1948, § 616.1 *et seq.* (Stat Ann § 27.838 *et seq.*), the trial court has the power to allow amendments to pleadings for furtherance of justice, and whether or not the amendment may be allowed rests in a large measure in the discretion of the trial judge. *Randall* v. *Douglass,* 321 Mich 492. During the trial or hearing, only those amendments should be allowed which do not work to the surprise .or disadvantage of. the .adverse party. Injecting the issue of identity .into the· instant .case would have had such. an effect under the circumstances, and there was no abuse· of discretion in the judge's refusal. to allow an amendment of the answer, particularly when it. would result in a defense that contradicted the .answer upon which· plaintiff had· a right to .rely in preparing·for the trial. For. cases in which a similar refusal was approved,· see *People, for the use of National Regulator Co.,* v. *Rosewarne, 247* Mich 22;·*Morocco* v. *Lange,* 266 Mich 238; *Stankrauff* v. *DeVoe,* 281 Mich 660; *National Land Co.* v. *Ternes,* 298 Mich.455.. .The admission of testimony as to the description of the harvester, whether "No. 2" .or "1 A-2" is not inconsistent with the ruling of the trial court, as such proofs might properly bear upon the issues of constructive notice, which we shall discuss.

It is not.claimed that defendants had actual notice of .the existence of a mortgage on the harvester prior .to the time they were contacted by the representatives of the plaintiff. Defendants also contend that

the description of the machine in the mortgage filed did not sufficiently specify the exact machine to constitute constructive notice, and that consequently they took as bona fide purchasers with rights superior to plaintiff.

Plaintiff on appeal claims that a discussion of that issue would be improper as there was no issue raised by the pleadings concerning a proper description of the mortgaged property. An examination of the record, however, reveals that although the trial court refused to consider the issue of description as going to the problem of identity, the question of whether or not the mortgage afforded constructive notice in general was fully discussed at the trial. No objection was taken to any of defendants' testimony concerning lack of constructive notice, nor did counsel object to a discussion of the problem in the motions for directed verdict and new trial. In numerous cases, this Court has refused to consider objections to the sufficiency of pleadings which were not raised below. See *Cadillac Theatre Co.* v. *Fitzgerald,* 210 Mich 6; *Greenough* v. *Willcox,* 238 Mich 52; *Willox* v. *Townsend,* 245 Mich 632; *Hasson* v. *Mutual Benefit Health & Accident Association of Omaha,* 309 Mich 331; *Cooper* v. *Cooper,* 319 Mich 692. For our purposes, therefore, we may assume that the issue of constructive notice, or the lack of it by reason of the description of the property, was properly before the court and presented on trial, and we will proceed to a discussion of the merits of the issue. The description of an A-2 harvester in the mortgage was sufficient to give defendants constructive notice in purchasing a 2 International Ensilage Harvester. The mortgage further provided that if the mortgagor should sell any of the mortgaged property, plaintiff would have the power to seize it and sell it at a public sale.

The case of *Willey* v. *Snyder,* 34 Mich 60, is the leading Michigan case concerning the sufficiency of the description of property covered by a chattel mortgage.  Justice Cooley, writing therein for a unanimous Court, laid down the general rules which have been followed by this Court in subsequent decisions.  The description in question was

"One Durm bull, known as the Grinnalls bull, — said bull is 4 years old and weighs about 2,400 pounds,"

and was held not to be open to objection.  The mortgagor at the time had but 1 bull who was called a Durham and was known as the Grinnalls bull.  The court pointed out that there was only 1 bull to select from, and it could even if necessary be picked out from a large number of bulls as distinguishing characteristics had been given, and continued (pp 61, 62) :

"But if a stranger is to be sent out to select property mortgaged, with no other means of identification than such as are afforded by the written description, and without being at liberty to supplement that information by such as can be gained in the mortgagor's neighborhood by inquiry of those who would know what property the mortgagor was possessed of which would answer the description in the instrument when it was given, and by possessing himself of such other circumstances as persons usually avail themselves of in applying written descriptions to the things intended, it is much to be feared that the stranger would be so often at fault that chattel mortgages, if their validity depended upon his success in identifying the property, would seldom be of much value as securities.

"Written descriptions of property are to be interpreted in the light of the facts known to and in the minds of the parties at the time.  They are not prepared for strangers, but for those they are to affect; the parties and their privies.  *A subsequent*

*purchaser or mortgagor is supposed to acquire a knowledge of all the facts, so far as may be needful to his protection, and he purchases in view of that knowledge.* * * * Descriptions do not identify of themselves; they only furnish the means of identification. They give us certain marks or characteristics,—perhaps historical data or incidents,—by the aid of which we may single out the thing intended from all others; not by the description alone, but by that explained and applied." (Italics ours.)

The rule of *Willey* v. *Snyder, supra,* casts the burden on the subsequent purchaser or mortgagee to make reasonable inquiry beyond the description in the mortgage itself if it furnishes the means of identification; and if such reasonable inquiry would reveal the complete identification, the filing of the mortgage will constitute adequate constructive notice.

What is the situation here? If defendants had gone to the register of deeds' office, they would have learned that the implement dealer had given a mortgage on an International ensilage harvester, the type of machine they intended to buy from him. Although the harvester was sold to them as a "No. 2" and the mortgage specified an "A-2" this was not sufficient misdescription in the light of the exact similarity of the names and brands of the machines specified. Indeed, counsel concede in their brief that "whether the ensilage harvester was a *No. 2* or an *A-2* has no real bearing on the questions of constructive notice to the defendants." In the small village of Munith, the location of Artz's farm implement business would be well known and the logical assumption would be that the mortgaged farm implements were to be used in connection with his business, as part of his stock in trade. It would then have been possible for them to ascertain by inquiry of Artz or of plaintiff if they were buying the mortgaged harvester. Defendants have made no showing

that Artz was in possession of more than 1 harvester of identical description, or in any case, that a proper inquiry would not have revealed the identity of the machine, they purchased, particularly in view of the fact that they were doing business in a small village and with an implement dealer whose business in view of his finances may not have been extensive. We, therefore, hold that the description in the mortgage was sufficient to identify the harvester if reasonable means were used to pursue such identification, and, therefore, constituted constructive notice to defendants.

Even assuming that the chattel mortgage contained an adequate description of the ensilage harvester, defendants contend that plaintiff was estopped from asserting any interest in the mortgage by reason of leaving the machine so mortgaged in Artz's possession, ostensibly for sale, after Artz had defaulted on the note.

Plaintiff contends that the question of estoppel cannot be before this Court since it was not properly pleaded in defendants' answer. It is true that Court Rule No 23, §§ 3 and 5 (1945), requires that the facts concerning any affirmative defense, such as estoppel, must be fully pleaded and that such was not done by defendants in their answer. However, it appears that testimony forming the basis of the claimed estoppel was admitted without objection by counsel and that counsel and the trial court discussed *Daas* v. *Contract Purchase Corp.,* 318 Mich 348, the case upon which defendants rely. The issue having been discussed in the trial court, plaintiff cannot now be heard to object to the sufficiency of defendants' pleadings in this regard. See particularly *Cadillac Theatre Co.* v. *Fitzgerald, supra,* in which the affirmative defense of payment was not pleaded but was discussed without objection on trial. We proceed to a discussion on the merits of this issue.

Defendants argue that the circumstances herein indicate that Artz was given permission by plaintiff contrary to terms of the mortgage to sell the machinery included in it; and that they should have been allowed by the trial court to show by parol that such permission had been given. Defendants state, "The court was firmly of the opinion that the wording of the mortgage itself controls." They cite the following colloquy which took place during the cross-examination of the bank's loaning officer:

"*Q.* As far as the bank was concerned, it was left right there at his place of business, all this stuff covered by the mortgage?

"*A.* It was supposedly so, because it was so covered. The fact he sold it, of course, was contrary to our wishes inasmuch as it was a business-use loan.

"*Q.* Contrary to your wishes. Is there any agreement that he should not sell that?

"*A.* Yes. The chattel [mortgage?] doesn't give him permission to sell.

"*Q.* Well, that is not the answer to the question.

"*The Court:* That answers the question, Mr. Dahlem. The witness said that it is contained in the mortgage itself, which he agrees to do. Read it if you want to.

"*Mr. Dahlem:* I have, your Honor.

"*The Court:* Then you should be able to see the provision in the agreement itself.

"*Mr. Dahlem:* Well, is the court of the opinion that they could not give him permission to sell that, either impliedly or expressly?

"*The Court:* I am not answering questions for you Mr. Dahlem, as to my opinion. I am merely stating to you that the agreement contains that provision. You say you have read it, so you must know it contains it."

It appears from this quoted portion of the record that in fact the trial court made no ruling as to the admissiblity of parol evidence to show permission,

and that no such ruling was requested by parties nor was it sought to introduce testimony pertaining thereto. Defendants cannot on appeal complain for the first time that they would have been able to prove permission to sell as the basis of the claimed estoppel.

Defendants cite *Daas v. Contract Purchase Corp., supra,* as authority for the proposition that it should be presumed that the dealer Artz in selling the harvester was doing what he had been given permission to do, and the defendants cannot be charged with the loss if they relied on that presumption, even if they cannot (or are not allowed to) show that Artz had permission to sell contrary to the written provisions of the chattel mortgage. They contend that the basic principle involved is:

"Where a mortgagor has apparent authority from the mortgagee to sell the mortgaged property and collect the proceeds, a purchaser relying on the apparent authority acquires a good title as against the mortgagee."

An examination of the *Daas Case,* an equity case, however, reveals that the court therein recognized the general rule that the filing of a chattel mortgage was constructive notice of its existence and that subsequent purchasers could not be bona fide purchasers, limiting its decision to the particular facts presented. The *Daas Case* involved a floor plan mortgage of automobiles by a retailer who retained the certificates of title to be delivered to a purchaser. The Court stated (at pp 354, 355):

"The precise question here is whether the appellant finance company, mortgagee under properly filed floor plan mortgages covering automobiles left in possession of the dealer-mortgagor, to be placed in stock by him and sold to the dealer's customers in the usual course of business, allowing the dealer

to transfer certificates of title without disclosing the liens, leaving it to the dealer to thereafter pay the mortgages and obtain the releases from the liens after the sale and transfer of title, can thereafter claim the automobiles from purchasers who had received a clear transfer of title from the dealer, without any actual notice or knowledge of the liens."

The court held the transfer of certificates of title to the cars good because of the provision of the motor vehicle title act relative to liens on motor vehicles where ownership does not change, becoming a part of the certificate of title. See CL 1948, § 256.102 (Stat Ann 1947 Cum Supp § 9.1472). For present statute, see PA 1949, No 300, § 238 (CL 1948, § 257.238 [Stat Ann 1951 Cum Supp § 9.1938]).

In *Steggles* v. *National Discount Corp.*, 326 Mich 44 (15 ALR2d 208), we held (syllabus 3):

"Finance company was guilty of constructive fraud where it refrained from having its lien set forth on certificate of title of an automobile and allowing the dealer, either through design or carelessness, to secure possession of the certificate of title and perpetrate fraud upon plaintiff by representing there were no liens against the car and showing him the certificate of title."

The financing and sale of farm machinery has not become the subject of a distinctive set of customary and statutory practice as has the extensive and complex sale of automobiles. This does not apply to the facts in the instant case. We, therefore, apply the general rule applicable to chattel mortgages set forth in *Pinconning State Bank* v. *Henry,* 258 Mich 44, wherein we said (p 50):

"The filing of the chattel mortgage in question was notice, and defendant could not be a bona fide purchaser for value without notice. Of course, if defendant had been a bona fide purchaser for value

without notice, demand would have been necessary to ·change his rightful possession into a wrongful possession, but, not being a bona fide purchaser without notice, no demand was necessary before instituting suit."

Judgment of the trial court is affirmed, with costs to plaintiff.

North, C. J., and Dethmers, Carr, Bushnell, Sharpe, Boyles, and Reid, JJ., concurred.