351 Mich. 498 (1958)
88 N.W.2d 535
KENNEY
v.
HATFIELD.
Docket No. 38, Calendar No. 47,327.
Supreme Court of Michigan.
Decided March 6, 1958.
Rehearing denied April 14, 1958.
*500 Edward James Kenney, Jr., in propria persona.
Alexander, Cholette Buchanan & Conklin (Paul E. Cholette, of counsel), for defendant Hatfield.
Gore & Williams (Charles W. Gore, of counsel), for defendants Boothby, Case and Palladium Publishing Company.
EDWARDS, J.
This is a libel suit between a lawyer on one hand, and a probate judge, a newspaper and 2 executives thereof on the other.
The alleged libel was in the form of a political advertisement authored by the probate judge during a political campaign when he was running for circuit judge, and printed in the News Palladium of Benton Harbor. The advertisement was as follows:
"On my way to the court yesterday morning I had the 8 o'clock news tuned in over WHFB and heard the broadcast concerning my commitment of Edward J. Kenney, Jr., to the State hospital back in 1950.
"Wednesday's hearing in the Kenny v. Hatfield matter was merely the conclusion of the hearing held last May. It makes colorful campaign material in the circuit judgeship race for the lawyer-trained judge from Kalamazoo again repeated what he had previously said and prefaced his former statement by saying that as he entered Berrien county he was greeted by signs which read: `Elect Judge Malcolm Hatfield, Circuit Judge, 50,000 decisions in 22 years with only 50 appeals. Experience counts.'
"We are so busy at all times in probate court deciding approximately 4,000 matters a year, that I paid the $359.75 court costs at the end of the hearing as I do not have the time to take an appeal to the Supreme Court. Based on all the facts and evidence *501 as presented to me it is my sincere belief that this man was mentally ill at the time I committed him.
"Judge Sweet did not have the opportunity of hearing the evidence on the case as I did. I understand that at that time, I got down to hard facts and was practical in the matter as numerous complaints were said to be on file against Kenney in the Benton Harbor police department indicating that he had been frightening women and required institutional treatment for mental illness for the protection of himself and society.
"PAID ADVERTISEMENT"
Plaintiff, who here appears on his own behalf, filed a declaration alleging that the last sentence of the advertisement was false and libelous, and sought $75,000 damages. Defendants by answer admitted the publication but denied the falsity thereof, and pleaded as an affirmative defense that the statement complained of was true.
At pretrial the issue was phrased thus:
"The issue is whether or not there were on file on November 18, 1950, in the Benton Harbor police department `numerous complaints indicating that the plaintiff had been frightening women and required institutional treatment for mental illness for the protection of himself and society.'"
Both sides waived a jury trial and this case was tried before a visiting circuit judge.
At trial, during plaintiff's proofs, the long history of this controversy was laid bare. Though much of it is a story which might be better left unprinted, we know of no way by which we may deal with the issues herein presented without repeating it in these pages.
It appears from this record that on formal petition of a deputy sheriff of Berrien county plaintiff in the instant proceedings, Edward James Kenney, Jr., was committed to the Kalamazoo State hospital after *502 hearing on November 18, 1950, in the Berrien county probate court before Judge Malcolm K. Hatfield, one of the present defendants. The commitment followed examination by 2 psychiatrists and the filing of certificates from them certifying that plaintiff herein was mentally ill.
Plaintiff was released August 16, 1952, presumably on parole. On December 4, 1952, he filed a bill of complaint against Judge Hatfield, seeking to declare void the 1950 commitment, and to have Judge Hatfield restrained from entering any order for his return to the hospital thereunder.
This case was ultimately disposed of by a circuit court decree which held the 1950 commitment void for failure of the record to show compliance with statutory requirements.
This decree was reported in the News Palladium, and read into this record as follows:
"The next one is dated May 29, 1954. The headline is a double-column headline reading: `Hatfield Scored in Legal Ruling on Asylum Case.' The sub-headline reads: `1950 Commitment is Tossed out by Kalamazoo Judge.'
(Reading):
"Visiting Circuit Judge Lucien B. Sweet Friday of Kalamazoo decreed in Berrien circuit court that Atty. Edward Kenney, Jr., of Benton Harbor was illegally committed to Kalamazoo State mental hospital in 1950.
"Simultaneously the jurist handed down an opinion which sharply criticized Probate Judge Malcolm Hatfield for his handling of Kenney's case.
"Pointing out that he resides in Kalamazoo and has viewed many similar proceedings during his 7-year tenure on the bench, Judge Sweet commented: `Not in my experience have I examined a file in commitment proceedings which failed to meet the requirements as has this one.'
*503 "Kenney, who spent approximately 18 months in the State hospital filed suit in 1952 against Judge Hatfield, Sheriff Erwin H. Kubath, Michigan mental health commission, and 2 State psychiatrists.
"Contending that he was unlawfully committed, Kenney petitioned to have the proceedings declared void. Moreover, he asked that the defendants be enjoined from sending him back to the hospital and that all records on his commitment be destroyed.
"Judge Sweet issued a permanent restraining order as Kenney requested, but said it wasn't within the court's authority to expunge from the record commitment proceedings."
It was the proceeding described above which led to defendant Hatfield's advertisement which is the subject of plaintiff's present libel action.
With this much background before us, we turn to the police complaints referred to in the advertisement. They were introduced in the course of plaintiff's case and are reproduced below:

*504 "Plaintiff's exhibit 3
 "City of Benton Harbor 66
 "Police Department 49 No. 2687
 "Complaint
 "Date June 16, 1949 Time 3:51 p.m.
 "Name Mrs. Sheckles
 "Address Nurses Home
 "Telephone No.
 ---------------------------------------------------------------
"Remarks: Says that ever night between 10:30 and 11:30 some fellow that walkes stiff and has a left hand deformed has been bothering the nurses on their way home. Would like to have us check.
"Went to the hospital an followed the girls home. This man didn't say a word to the girls when they passed. We know who this man is. The girls don't want to sign a complaint.
 "Signed
 "ANDERSON & STORY Sergt. MURPHY
 (handwritten) (typed)
 "Officers."

*505 "Plaintiff's exhibit 4
 "City of Benton Harbor 66
 "Police Department 49 No. 3913
 "Complaint
 "Date August 3, 1949 Time 9:20 p.m.
 "Name Detectives Woodruff & Vosburg.
 "Address
 "Telephone No.
 ---------------------------------------------------------------
 "Remarks:
"While patrolling north on Pipestone at about half way between Baird and Clay we noticed a girl that had been going north on the west side of the street run from the west side to the east side and we noticed the greaseball (Kenny) that lives on Pipestone on the east side near Baird, he was near to this girl before she ran across the street, we have had complaints from the nurses on this subject so we attempted to stop this girl to inquire why she was running and if he had said anything to her. Det. Vosburg got out of the car to talk to her and identified himself as from the police dept. but she took off we could not get close enough to her to question her if she calls try and get the information from her as to what happened. (Evidently she has been chased by policemen before.)
 "Signed
 "Dets. WOODRUFF and VOSBURG Sert. SUMMERFELT"
 "Officers (typed) Sergeant" (typed)
*506 "Plaintiff's exhibit 5
 "City of Benton Harbor 66
 "Police Department 49 No. 4390
 "Complaint
 "Date 8/24/49 Time 9:17 a.m.
 "Name Leroy Hadley
 "Address 1741 Gulf View Rd.
 "Telephone No.
 ---------------------------------------------------------------
"Remarks: Followed Ruth Maddron, nurse at Mercy Hosp. Works from 3 P to 11 P  has been followed by a white man about 5' 8" It. compl, slightly bald, blue suit, 130-140#. Takes short steps.
"Att. Dt. Andy and Mc. This may be Kinney. Stop at frozen custard stand at Hosp. He can give better disc. and knows when he lives.
 "Signed
 add over E. LINDY (handwritten)
 "Officers Sergeant
"She lives at Gray Gables on Pipestone. This man is Kinney and lives at 849 Pipestone. We have watched him several times, but he never harms anyone, but does scare them. He is a mental.
"MAC & JOE A. (handwritten)"

*507 "Plaintiff's exhibit 6
 "City of Benton Harbor 66
 "Police Department 49 No. 4755
 "Complaint
 "Date Sept. 7, 1949 Time 7:30 p.m.
 "Name Miss Shekal
 "Address Mercy Hospital
 "Telephone No.
---------------------------------------------------------------
"Remarks: That crazy man has been crossing the street to follow the girls to and from work at night. The girls are scared of him.
 "Kenny no doubt
 "Signed RYNEARSON
 "Officers Sergeant"

*508 "Plaintiff's exhibit 7
 "City of Benton Harbor
 "Police Department 49 No. 5235
 "Complaint
 "Date 9-27-49 Time 1028 p.m.
 "Name Phone
 "Address 806 Pipestone
 "Telephone No.
 "Remarks: Wants an officer
 ---------------------------------------------------------------
"Edward Kenny  849 Pipestone street was walking south on Pipestone on the west side of the street and 3 young fellows ranging age from 18 to 22 jumped him and dragged him to the south side of the old factory and the corner of Niles street and Pipestone street where they beat him in the face with their fist and saying `stay away from these houses up here.' Kenny stated they all got into a old car parked at the curb and took off. Car described as about a 39 light model.
#1 subject  about med height 22 years heavy build. #2 subject  light jacket med build. #3  no description.
"IVES (handwritten)
"Detectives Woodruff & Vosburg have been watching this Kenny the past few nights as we have had complaints concerning him from various women in the neighborhood and earlier about 9:30 we noticed
 "Cpl. IVES & ENGLER
 (handwritten) E. LINDY
 "Officers Sergeant
"Kenny walking north on Pipestone about in front of the Cassler home and there were 2 young men in back of him about 100 ft. that appeared as if they were following him and we kept a check on them for over 1/2 hour until they disappeared and at the time we figured that they must be watching him for the same reason that we were.
"About 5 minutes before the call came about him being beat up we saw him again in front of the Cassler home going north and he must of got it on his southern trip.
 "Dets. WOODRUFF & VOSBURG
 (typed)
"We believe that this was done by some one that has been laying for him most likely some husband that has had his wife frightened by this mans actions or could be one of the nurses boy friends as they have been having trouble with him following them between the nurses home and the hospital."

*509 "Plaintiff's exhibit 8

"Investigation Report
 "Detective Bureau Benton Harbor Police Department
 "Complaint No. File No. Date of Complaint
 "Complainant The Police Dept. (typed)
 "Nature of Complaint Keep a check on Edward James Kenny, Jr.,
 of 849 Pipestone.
"We have had several complaints on the above subject bothering girls as they get out of work at the Mercy hospital at 11:00 p.m. He makes it a point to get out on the street and meet them face to face as they are walking from the hospital to the Gray Gables where they live.
"We have followed this man on different occasions to try to catch him in the act of window peeping or assaulting some girl. All he does when we watch him is to tip his hat to them and say, `Good evening girls' to them.
"Sept. 28, 1949
"We checked at the F & M Bank and Garry Vigansky tells us that this man comes into the bank every day and either draws out a dollar or deposits a dollar. He always goes to the girl named June next to him. He will wait in her line if it takes a half hour to get there rather than to come to his window right away. Dick Willard showed us 5 pages of statements where Kenny has made withdrawals of .50 and 1.00 each time. These are done every day, 6 days a week.
"We checked at the State Bank and they tell us the same thing there and they are scared of him there and have told him to stop coming in there and bothering them with 50 cent and dollar deposits. He has $4.11 in a saving account there. He has 50 cents in the F & M Bank yet. "Checked at the Peoples Savings and they tell us that he used to come in there and always go to the 1 window where this 1 certain girl is and would never go to another. If she was busy and the others were not he would wait. They told him to stop coming in there also.
 "ANDERSON and McCARROLL
 "Signature of (typed)
 Investigating Officers"

*510 "Defendants' exhibit A
 "Benton Harbor 62
 "Police Department 50 No. 7258
 "Complaint
 "Date Nov. 28, 1950 Time 5:18 p.m.
 "Name Phone Call (later Mrs. Gladys Sliter)
 "Address 651 Baird Street
 "Telephone No.
 ---------------------------------------------------------------
"Remarks: Received a phone call from a woman at 651 Baird street that a man just knocked on her door then didn't wait to be admitted but just came right in and demanded to use the phone to call a cab, but when he saw her son he demanded that her son take him to Saint Joseph because it was an emergency. The lady (whose name I couldn't got) said to send the police at once because she was afraid of the man would get violent. Arrested John Kenney. Turn over to Sheriff Office.
 "Signed
 "Det. JOLLAY-McCARROLL WAS
 (typed) (typed)
 "Officers Sergeant"
*511 All of the above complaints except the last one were introduced in evidence by the plaintiff in this case. This record discloses no denial by the plaintiff of the conduct recited in these complaints. On the other hand, it does disclose plaintiff's legal argument which assumes the truth of the facts disclosed therein, vigorously disclaiming that the conduct referred to in the complaints was illegal or that it demonstrated any improper motive on the part of plaintiff. The record also contains plaintiff's testimony pertaining to examinations by 4 psychiatrists in the year 1950, 2 of whom filed certificates in the commitment proceedings, and 2 of whom examined him at the Kalamazoo State hospital immediately after his admittance and preceding his 20-month stay there.
The record also discloses that plaintiff had been in 2 mental institutions prior to 1950 either by voluntary admittance or family placement.
Defendant Hatfield testified that he was familiar with the complaints referred to above at the time of the 1950 hearing and at the time of the publication of the alleged libel. He also testified that the probate court file in relation to the Kenney commitment proceedings contained 4 certificates from doctors of good standing in the community, and that he was familiar with those certificates. He testified further that he had the police complaints, contents of the Kenney commitment probate court file including the medical certificates contained therein, and the knowledge of plaintiff's previous admissions to mental hospitals all in mind at the time of the publication of the alleged libel.
At the close of plaintiff's proofs, the circuit judge hearing the case dismissed the cause of action as to defendants Boothby, Case and the Palladium Publishing Company on the grounds that the falsity of the publication complained of had not been established *512 and no malice had been shown, and further that the publication as to these defendants was qualifiedly privileged. He reserved decision on a similar motion by defendant Hatfield. Defendant Hatfield then presented 2 doctors who testified that in their opinion, based on the police complaints and assuming the facts therein to be true, plaintiff in 1950 had been mentally ill and required institutionalization and treatment.
At the close of these proofs, the circuit judge dismissed the cause of action as to the defendant Hatfield, too, on the ground that the publication complained of was without malice and was true.
We do not, of course, reverse the judgment of a trial judge hearing a nonjury case unless the evidence clearly preponderates to the contrary or unless there were errors of law. Barnes v. Beck, 348 Mich 286; Hayes Construction Co. v. Silverthorn, 343 Mich 421.
We find no serious problem as to construction of the sentence complained of. In its ordinary sense as ordinary men would read this publication, it constituted a charge that in 1950 plaintiff was mentally ill and that the police complaints referred to so indicated.
It is generally held that a publication imputing impairment of mental faculties is libel per se, and we agree with plaintiff and appellant that the publication complained of here is such. Belknap v. Ball, 83 Mich 583 (11 LRA 72, 21 Am St Rep 622); Taylor v. McDaniels, 139 Okla 262 (281 P 967, 66 ALR 1246, see annotation following, 66 ALR 1257); 33 Am Jur, Libel and Slander, § 51.
On this appeal, however, we deal with a record wherein the trial judge served as the finder of the facts. The judge's opinion said in part "At the outset. I am satisfied, as a matter of fact, that the publication is true." The trial judge then went on to review *513 at some length the circumstances in relation to the circuit court's criticism of Judge Hatfield and its publication in a news story which called forth the advertisement complained of. He noted that plaintiff in the instant case was likewise the plaintiff in the cause which had brought the criticism of defendant Hatfield and held as a matter of fact that under all the circumstances which had been recited the record revealed justification for, and no malice on the part of, the various defendants in occasioning this publication.
The publication complained of was a statement containing both fact and opinion. The fact portion of the statement was to the effect that in 1950 there were numerous police complaints on file indicating that plaintiff had been frightening women. As the quotations from the record indicate, there is ample evidence from which the trial judge could have found that this statement of fact was true.
The opinion portion of the statement was generally to the effect that the complaints referred to indicated a need for institutionalization and treatment for plaintiff. The test of a statement of opinion is not its absolute truth (for such can never be proven), but rather whether or not under all the circumstances the opinion was one which a reasonable man might hold.
"Truth, as a defense, becomes greatly complicated when the defamatory publication consists of statements which are in part statements of fact and in part statements of judgment or opinion. It is said that proof of the truth of the factual statements carries with it a privilege to make such comment thereon as a reasonable man might make. If the comment is or may be understood as implying the existence of other facts sufficient to justify it, proof of such facts is necessary to complete the defense of truth." 1 Harper & James, Torts, § 5.20, pp 418, 419.
*514 See, also, 3 Restatement, Torts, § 582, comment h; 1 Harper & James, Torts, § 5.8.
We note that plaintiff did not present any medical testimony pertaining to his condition in 1950 to dispute the certificates of mental illness contained in the probate court file which was introduced in evidence in this cause.
Plaintiff and appellant vigorously urges upon us that his conduct in following women on the street whom he did not know, or seeking with deliberation day-after-day the particular window of a particular female bank cashier, was entirely legal and in nowise abnormal. We are not persuaded that it is impossible by repetition of wholly innocent acts to achieve a cumulative effect of frightening other persons. There is evidence in this record from which a deliberate purpose in achieving this effect could be inferred. We cannot say as a matter of law that the trial judge was in error in drawing an inference of abnormality therefrom.
We believe that the record in this case at the close of plaintiff's proofs contained ample evidence to justify his dismissal of the cause of action as to all defendants on the grounds that the factual allegations were true, the opinion allegations were reasonable, and the publication was without malice. Sullings v. Shakespeare, 46 Mich 408 (41 Am Rep 166): Simons v. Burnham, 102 Mich 189: Noth v. Evening News Association, 338 Mich 359: 33 Am Jur, Libel and Slander, § 117: 1 Harper & James, Torts, § 5.20.
What has been said disposes of all questions which have been presented to us on appeal. We will not pass upon the issues argued to us pertaining to the claim of qualified privilege on the part of defendants Boothby, Case and Palladium Publishing Company. The defense of qualified privilege, if it is to be relied upon, should be affirmatively pleaded. 33 Am Jur, Libel and Slander, § 248. Although the trial judge *515 indicated midway in the trial that he intended to consider this defense, the record before us does not disclose any motion to amend nor any order granting amendment of defendants' answers in this regard. Although amendment of pleadings rests largely within the discretion of the trial judge (Honigman, Michigan Court Rules Annotated, Rule 25 [1945], p 242), amendments should not be allowed during trial which work to the surprise or disadvantage of the opposite party. Jackson City Bank & Trust Co. v. Blair, 333 Mich 399 (32 ALR2d 920).
Affirmed. Costs to appellees.
DETHMERS, C.J., and CARR, KELLY, SMITH, BLACK, and VOELKER, JJ., concurred.
KAVANAGH, J., took no part in the decision of this case.