392 P.2d 681

**L. Clifton READ d/b/a Read Implement Company, Plaintiff-Appellant,**

**v.**

**DOWNEY STATE BANK, a banking corporation, Defendant-Respondent.**

No. 9259.

Supreme Court of Idaho.

May 28, 1964.

Rehearing Denied June 22, 1964.

Vern E. Herzog, Jr., Pocatello, for respondent.

R. M. Whittier, Pocatello, for appellant.

SMITH, Justice.

This is an appeal from a judgment for respondent (defendant) entered in an ac-

tion brought by appellant (plaintiff) to recover damages for the alleged conversion by respondent of sundry of appellant's farm machinery and equipment. Appellant assigns error committed by the trial court in rendering the judgment. He urges insufficiency of the evidence to support the findings and judgment, thus necessitating a review of the trial record.

February 17, 1959, appellant, doing business in Downey, Idaho, mortgaged certain personal property as security for his promissory note of $3,174.09 executed in respondent's favor, given to satisfy appellant's pre-existing debt owing to respondent. The chattel mortgage, prepared by respondent's attorney, described the mortgaged personalty as follows:

"Any and all personal property located in what is known as the Read Implement Company which is located on Lots 31 and 32 Block 51 and Lots 1 and 2 Block 51, townsite of Downey, Idaho, and any property hereafter acquired and placed on or in said property, the same constituting all machinery, parts, equipment, supplies of any and all nature and kind and any hereafter acquired property of any kind or nature placed in or on said premises."

Appellant being unable to meet the obligations of his promissory note, respondent foreclosed the chattel mortgage. The judgment and decree of foreclosure, dated August 1, 1960, and the order of sale which immediately followed, described the property foreclosed identically as described in the chattel mortgage, and directed the sheriff of Bannock County to sell all of the mortgaged property, or so much thereof as would satisfy the principal and interest due respondent, and costs of sale.

At the time of sale, August 10, 1960, the sheriff caused to be sold the personalty located on the four lots described in the chattel mortgage, and sundry of appellant's machinery and equipment located elsewhere than on those lots. The sale of all such personalty produced a surplusage of $502.-32, which sum respondent eventually caused cashed the check and retained the amount to be forwarded by check to appellant who

Appellant thereafter, on March 30, 1961, commenced this action seeking to recover as damages from respondent the reasonable value of the machinery and equipment allegedly converted by respondent in that, as appellant alleged, respondent wrongfully instructed the sheriff of Bannock County to sell such personalty although not encumbered by the chattel mortgage. Respondent, in its amended answer, denied such allegation and, by affirmative defense, alleged, (1) that in conducting the foreclosure sale, the sheriff acted pursuant to court order and not upon instructions given by respondent; (2) that by accepting and cashing the check for the surplusage realized from

sale of the personalty, appellant "is estopped from asserting any wrongful conversion against the defendant [respondent]"; and (3) that "it was the intention of all of the parties that all of the property owned by L. Clifton Read d/b/a Read Implement Company should be given as security to the Downey State Bank and that all of said property was property of the Read Implement Company and was part of the stock of said Read Implement Company."

In entering judgment for respondent after a trial on the merits without a jury, the trial court in effect found:

That the parties intended the mortgage to cover appellant's entire stock in trade then on hand and thereafter acquired and wherever physically located, the purpose of the real property description being particularly to pinpoint appellant's then operations, and not to limit the property covered.

That in the foreclosure action the court directed the sheriff "to sell the property covered by the mortgage"; and thereafter the sheriff "sold the property covered by the mortgage," according to the description contained in the chattel moragage, and in the judgment and decree of foreclosure; also "pursuant to the order * * * in said action," the sheriff sold certain other items of machinery and equipment (listed in the findings) which were also subject to the chattel mortgage.

The trial court then concluded that the personalty so sold, situated elsewhere than upon the four lots described in the chattel mortgage, also was covered by the mortgage, and that respondent did not convert any of the property.

Appellant contends that respondent, after preparing the chattel mortgage encumbering the personalty located on the four described lots, wrongfully caused to be sold at the foreclosure sale, appellant's personalty, listed in his complaint and which he contends was located on seven other lots,— the Dan Jensen property,—not referred to or described in the chattel mortgage; that therefore respondent must be held liable to appellant in conversion for having caused the sale of appellant's personalty not located on the lots described in the mortgage. A thorough review of the trial record and applicable principles of law leads to the conclusion that appellant's contention in the premises is partially meritorious and that the trial court erred in entering judgment for respondent.

■ The general rule regarding the sufficiency of chattel mortgage descriptions was first announced by this Court in McConnell v. Langdon, 3 Idaho 157, 163, 28 P. 403, 405 (1891), as follows:

"A description of property is sufficient if it will enable a third person,

aided by inquiries *suggested by the instrument,* to identify the property." (Emphasis supplied.)

That rule was approved in Livestock Credit Corp. v. Corbett, 53 Idaho 190, 22 P.2d 874 (1933); it reflects the law universally recognized today by courts and treatises alike. Ingersol v. Seattle-First National Bank, 63 Wash.2d ——, 387 P.2d 538 (1963); Security First National Bank v. Haden, 211 Cal.App.2d 459, 27 Cal.Rptr. 282 (1962); Bumb v. McIntyre, 277 F.2d 647 (9th Cir. 1960); Witt v. Milton, 147 Cal.App.2d 554, 305 P.2d 944 (1957); Jackson City Bank & Trust Co. v. Blair, 333 Mich. 399, 53 N. W.2d 493, 32 A.L.R.2d 920; (1952) Annot., 32 A.L.R.2d 929 (1953); 10 Cal.Jur.2d, Chattel Mortgages, § 20 (1953); 14 C.J.S. Chattel Mortgages, § 57 (1939); 10 Am. Jur., Chattel Mortgages, §§ 53, 54, 55 (1937); 1 Jones, Chattel Mortgages and Conditional Sales, § 54 (6th Ed. 1933).

■■ While a lesser degree of certainty is required as between the mortgagor and the mortgagee than where the rights of third parties are involved, Annot., 32 A.L.R.2d, supra; 14 C.J.S. Chattel Mortgages, supra; 10 Am.Jur., Chattel Mortgages, supra, "[t]he court should not make the contract for the parties or interpret it to mean something which it in itself does not contain." Miller v. Remior, 86 Idaho 121, 383 P.2d 596, 599 (1963); Taysom v. Taysom, 82 Idaho 58, 349 P.2d 556 (1960).

Neither is parol evidence admissible "to indentify the chattels mortgaged unless there is something in the description or in the mortgage itself which suggests inquiries or means of identification." Witt v. Milton, supra 305 P.2d at 946; cf., Williams v. Williams, 82 Idaho 451, 354 P.2d 747 (1960); Stone v. Bradshaw, 64 Idaho 152, 128 P.2d 844 (1942), upholding the admissibility of parol evidence where the terms of the instrument are ambiguous.

■■ Since the language employed by respondent, to refer to and describe the mortgaged property, is clear and unambiguous, the integrity of the written instrument must be upheld; hence the trial court erred in finding that the parties intended the entire stock in trade, wherever located, to be mortgaged, inasmuch as the written expression of the parties' intentions admits of no such interpretation. The language used also fails to suggest encumbrance of any personalty owned by appellant, other than that located and to be located on the lots described in the mortgage, and not elsewhere. McConnell v. Langdon, supra; Security First National Bank v. Haden, supra; Witt v. Milton, supra. Nor did respondent seek reformation of the instrument so as to include additional personalty than therein described, wherever situate, belonging to appellant.

Appellant testified on direct examination that he mortgaged to respondent bank his

personalty located on the four lots described in the mortgage; also that he never mortgaged to the bank his personalty listed in his complaint as allegedly converted by the bank, and had never given the bank permission to sell that personalty in satisfaction of the mortgage. On cross-examination he stated that he kept such unencumbered personalty on the Dan Jensen land which he had rented as a place to keep used machinery; it was used stock in trade. On recross-examination he testified that he gave the mortgage on Read Implement Company "outside of the used machinery" (on the Jensen lots) and that Mr. Bowen, an officer of respondent bank, indicated there was sufficient chattels to secure the bank without including the used machinery.

The testimony of Mr. Bowen shows that he was acquainted with appellant's business, particularly with his stock in trade and where it was located. He testified on cross-examination.

"Q. Were you familiar with Mr. Read's business? A. Yes.

"Q. You knew the places where he was keeping his equipment, and the places where his used machinery was displayed? A. * * * yes.

"Q. And you knew at the time of the execution of the mortgage that he was using Dan Jensen's property to display his used machinery? A. Yes.

"Q. And did you know *at the time of the execution of the mortgage, or thereafter that equipment was being stored on lots other than what was described in the mortgage?*

"A. *They were already located on the lots; yes.*

\* \* \* \* \* \*

"Q. * * * did you know what equipment was being mortgaged at the time this mortgage was executed? A. Yes.

\* \* \* \* \* \*

"Q. And included the equipment on these four lots? A. Yes.

\* \* \* \* \* \*

"Q. And you knew what equipment was there at the time? A. Yes." (Emphasis supplied.)

Mr. Bowen when interrogated as to whether, at the time the mortgage was executed, any of the allegedly converted equipment listed in appellant's complaint was located on the four lots described in the mortgage, identified only a Johnson baler loader, which continued to remain there, and was sold at the sheriff's sale.

A Mr. Hall, employed for a time by Read Implement Company, testified as to being familiar with the allegedly converted equipment listed in appellant's complaint, and that at the time of the sheriff's sale on August 10, 1960, none of that equipment

was located on the land described in the mortgage.

■ The evidence is also insufficient to sustain the trial court's finding and conclusion that all of the property sold at the foreclosure sale on August 10, 1960, was pursuant to order of the court. Additional testimony of Mr. Bowen, and that of Mr. Vorweller, the deputy sheriff of Bannock County who conducted the sale, supports this conclusion.

Mr. Bowen, on cross-examination, testified:

"Q. Did the bank give Mr. Anderson [respondent's attorney] any authority to proceed with the foreclosure action? A. Yes, sir.

\* \* \* \* \* \*

"Q. And was Mr. Anderson advised of what property was mortgaged?

"A. Just what was located in the business; yes, sir.

\* \* \* \* \* \*

"Q. And was he given authority to proceed against all property located on all lots?

\* \* \* \* \* \*

"A. I gave him the authority as far as we were concerned; yes.

"Q. To proceed against Mr. Read's equipment no matter which lot it was located upon?

"A. Anything that was located and used in his business, \* \* \*

\* \* \* \* \* \*

"Q. \* \* \* Did you ever take an inventory or have a list of the property?

"A. Yes. An inventory was taken; yes. \* \* \* By the sheriff.

"Q. And was the bank advised of this inventory?

\* \* \* \* \* \*

"A. That was in February, '59; yes.

Mr. Vorweller, called by appellant, testified:

"Q. \* \* \* how did you determine what property you were to assume, that you were appointed receiver on?

"A. \* \* \* The building [appellant's building covered by the chattel mortgage] is all we foreclosed on at that time. We closed the doors on the building, and the contents of the building, \* \* \*

\* \* \* \* \* \*

"Q. Now was any of the equipment which you discussed with Mr. Bowen which was to be inventoried located outside of these lots [appellant's lots

described in the chattel mortgage]? A. Yes.

\* \* \* \* \* \*

"Q. \* \* \* was Mr. Read present at the sale? A. No.

"Q. \* \* \* was anybody from the Downey State Bank present at the sale? A. Yes.

"Q. Who was present?

\* \* \* \* \* \*

"A. Bowen. \* \* \*

\* \* \* \* \* \*

"Q. \* \* \* I was wondering how you determined the order of sale?

"A. The only way that it was brought up was the fact that Gus [respondent's attorney]—he did state that all property that belonged to Read Implement was being tied up for this sale. That's the way the sale was conducted. That's the way the inventory was taken \* \* \* on all Read Implement. \* \* \* it was to include all of the Read property."

The above-quoted testimony indicates that the deputy sheriff who conducted the sale of appellant's property was informed on different occasions by respondent's officer and attorney that all of appellant's property was to be sold.

The judgment and decree of foreclosure and the order of sale, both introduced in evidence, directed the sheriff of Bannock County to sell all of appellant's property located on the lots described in the chattel mortgage. The sheriff's notice of sale dated August 4, 1960, also introduced in evidence, contains the statement that it is based on the judgment rendered August 1, 1960, directing the sheriff "to sell certain property described in said judgment ·* *." That evidence, when taken together with the above-quoted testimony, supports the conclusion that all of the personalty sold at the sale on August 10, 1960, was not sold pursuant to order of the court.

■ Respondent asserts that appellant is estopped from alleging wrongful conversion on respondent's part, since appellant accepted and cashed the check covering the surplusage and retained the proceeds for his own use. Such contention is without merit.

"The acceptance of the proceeds of property converted, or the proceeds of any part of the property, may occur without intent to affirm the transaction which produced the proceeds, and consequently may be regarded as operating only in mitigation of damages and not · in bar of the conversion action." Annot., 3 A.L.R.2d § 5 at 228 (1949).

See also Commercial Credit Corp. v. Stan Cross Buick, Inc., 343 Mass. 622, 180 N.E. 2d 88 (1962); 89 C.J.S. Trover & Conversion § 189 (1955).

"The conversion is complete when the defendant takes, detains or disposes of the chattel. At that point, it is the traditional view that the plaintiff acquires the right to enforce a sale, and recover the full value of the property. The defendant cannot undo his wrong by forcing the goods back upon their owner, either as a bar to the action, or in mitigation of damages.

" * * * In any case, return of the chattel, whether consented to by the plaintiff or compelled by the court, does not bar the action, but goes merely to reduce the damages." Prosser on Torts, 2nd Ed. § 15 at 77–78, (1955).

See also National Motor Service Co. v. Walters, 85 Idaho 349, 379 P.2d 643 (1963); Winkler v. Hartford Acc. & Indem. Co., 66 N.J.Super. 22, 168 A.2d 418 (1961); Howard v. Deschambeault, 154 Me. 383, 148 A.2d 706 (1959); Roan v. McCaleb, 264 Ala. 31, 84 So.2d 358 (1955); 89 C.J.S. Trover & Conversion § 187 (1955); Annot., 3 A.L.R.2d § 4 at 225 (1949); Restatement of Torts, § 247 (1934).

We point to a circumstance which should receive attention upon a new trial, i. e., whether appellant, after executing the mortgage, received some equipment in exchange or as part payment of equipment covered by the mortgage; and if so, a determination should be made in the prem-ises, inasmuch as the mortgage covered not only the property listed in the instrument but "any hereafter acquired property * * * placed in or upon said premises."

Appellant testified on cross-examination that he placed new equipment and used tractors, as well as "little items dumped off there," on two of the lots described in the mortgage, situate back of the building known as Read Implement Company. And in regard to the personalty located on the Dan Jensen property, on direct examination, he stated that some of that personalty was acquired after giving the mortgage to respondent bank, and then his testimony appears:

"Q. And this property that was acquired after the mortgage to the Downey State Bank, was it a trade in on new property, new equipment?

"A. Oh, either on new or on other used; it could have been either. Most of it—I would say a lot of it was traded in on other used.

* * * * * *

"Q. * * * Do you know which?

"A. No, I couldn't state exactly which. I might if I checked my records I could probably find it."

He also stated that he did repair work on various items of the traded used equipment, taking it to the shop of the implement company (situated on the mortgaged premises).

Appellant recognized that any property put on the four lots in question became subject to the mortgage.

The judgment is reversed and the cause remanded for a new trial. Costs to appellant.

KNUDSON, C. J., and McQUADE, McFADDEN and TAYLOR, JJ., concur.