(No. 6094.  September 20, 1934.)

H. H. BRATTON, Appellant, v. FRANK MORRIS, Respondent.

[37 Pac. (2d) 1097.]

James F. Ailshie and Tannahill & Durham, for Appellant.

A. S. Hardy and Verner R. Clements, for Respondent.

HOLDEN, J.—October 27, 1919, appellant and respondent entered into a partnership agreement for the purpose of engaging in a general merchandise business at Lewiston, Idaho, under the firm name and style of Bratton-Morris Company. A little more than nine years later, to wit, January 1, 1929, appellant and respondent leased a store building, located in Lewiston, from one A. W. Kroutinger, for a term of five years. The introductory recital reads:

"THIS INDENTURE, made this 1st day of January, 1929, between A. W. Kroutinger, of Lewiston, Nez Perce County, State of Idaho, the first party herein, and H. H. Bratton and Frank Morris, co-partners doing business under the firm name and style of Bratton Morris Company, the second parties hereto."

The lease contained the following "assignment" provisions:

"The second parties (referring to appellant and respondent) may assign this lease or sub-let any part of the premises provided that the second parties shall continue bound for the payment of rentals and the performance of all the obligations of the second parties with the same effect as if such assignment or sub-lease had not been made."

And it was executed as follows:

"IN WITNESS WHEREOF, the parties have hereunto set their hands and seals the day and year in this instrument first above written.

"A. W. KROUTINGER, (Seal)
"First Party.
"H. H. BRATTON, (Seal)
"FRANK MORRIS, (Seal)
"Second Parties."

The record shows that the purpose of leasing the Kroutinger store building was to enable the partnership to control the property against competitors and to acquire the exclusive sale of certain standard lines of merchandise.

March 11, 1929, the lease was assigned to one A. B. Servey. The assignment reads:

"KNOW ALL MEN BY THESE PRESENTS: That undersigned, for and in consideration of the sum of Ten Dollars ($10.00) and other valuable considerations, to them in hand paid, the receipt whereof is hereby acknowledged, do by these presents bargain, sell, transfer, convey, assign and set over unto A. B. Servey, of Denver, Colorado, all our right, title and interest of, in and to the annexed lease, dated January 1, 1929, between A. W. Kroutinger and the undersigned, subject, however, to all of the terms, conditions and covenants of said lease, which the said A. B. Servey assumes and agrees to discharge according to the provisions of said lease.

"Dated this 11th day of March, 1929.

|  |  |
|---|---|
| "H. H. BRATTON, | (Seal) |
| "FRANK MORRIS, | (Seal) |
| "GRACE MORRIS, | (Seal) |
| "NELLIE BRATTON. | (Seal)" |

And thereafter Servey assigned the lease to Servey Stores Company, a corporation.

The partnership, from partnership funds, paid the rent on the Kroutinger lease until it was assigned to Servey, and from partnership funds the expenses incident to obtaining the lease were also paid. It further appears that the Kroutinger lease transaction was entered in the partnership books in several different ways, one of which was by account No. 122, entitled "Alexander," the items of which are as follows:

" 'February rent—Kroutinger...... $ 650.00
March 10, Servey-Alexander lease..                    $3,500.00
March 30, Al Kinkle—See H. H. B.     25.00
March 30, A. W. Kroutinger.....     650.00
May 30, Cox & Martin...........
Closed to P. & L............... 2,040.00' "

The partnership net profit amounting to the sum of $2,040 was carried into the partnership profit and loss account as a part of the total partnership profit, and distributed to the partners.

October 18, 1930, apparently because the partners were not getting along very well together, the partnership was dissolved. The material provisions of the contract of dissolution are as follows:

"Fifth: The said Herbert H. Bratton hereby assumes and agrees to pay and save and hold the said Frank Morris harmless from any and all obligations of whatsoever kind or nature of the said copartnership outstanding and unpaid up to and as of the date of this contract, as shown and recorded upon the books of said copartnership, together with and including any and all liabilities or lease holds and goods ordered and goods in transit and unpaid insurance premiums."

"Eighth: It is agreed that this agreement is a full and complete settlement of all matters and things between the respective parties, and they do mutually release and discharge each other from liability to the other on account of their previous association as copartners and on all other accounts."

"It is further agreed that this settlement is made and based upon the book value of the assets of said business, which is agreed to by the respective parties, and represents and is a fair adjustment of the rights of the respective parties."

The Servey Stores Company paid the rent accruing under the terms of said lease up to September 1, 1931, but failed to pay all of the rent for the months of September and October, and thereafter wholly defaulted. Later, and on account of such default, Kroutinger demanded payment from both appellant and respondent, and, thereupon, appellant made demand upon respondent that he pay one-half of the rent, which respondent refused to do, whereupon appellant made several payments, but later on quit making payments in response to Kroutinger's demands. Kroutinger then brought an action against appellant and respondent to, and recovered judgment for, the balance of the rent money due under his lease, which judgment, with interest and costs, the appellant paid, and then brought this action

against respondent to recover one-half of the sums paid to Kroutinger in response to his demands, as well as one-half of said judgment, interest and costs.

The complaint sets forth four causes of action. Three for one-half of the sums, respectively, of rent money paid to Kroutinger upon demand, and one for one-half of the amount paid in satisfaction of said judgment. The pertinent allegations, set forth in each cause of action, are:

"That on or about the 1st day of January, 1929, the plaintiff H. H. Bratton and the defendant Frank Morris, jointly made, executed and entered into a written contract of lease with one A. W. Kroutinger of Lewiston, Idaho, by the terms of which lease the said plaintiff and defendant acquired from the said A. W. Kroutinger as tenants in common, a ground floor and basement of those certain brick buildings situate, standing and being upon . . . . ''

"That the plaintiff and defendant by the terms of said lease were authorized to assign said lease or sublet any part of the premises upon the condition that said lessees would continue to be bound for the payment of the rentals and the performance of the obligations contained in said lease with the same force and effect as if such assignment or sub-lease had not been made."

"That by reason of H. H. Bratton and Frank Morris holding said premises as tenants in common, the said Frank Morris was jointly liable for the payment of the rent under the terms of said lease with this plaintiff . . . . ''

The respondent denied those allegations, and, among other things, alleged that the Kroutinger lease was obtained by appellant and respondent as copartners, and that the lease was owned and held as partnership property, and not as tenants in common. And respondent alleged that under the terms of the contract of dissolution appellant "assumed all and every of the obligations" of the copartnership of whatsoever kind or nature, "including any and all liability on leaseholds," and that by the terms of said contract appellant "agreed to save and hold" respondent "harmless from any and all of said obligations and liabilities." Respond-

ent further alleged that by the terms of the contract of dissolution appellant became the principal debtor upon the Kroutinger lease, and that as between appellant and respondent, the respondent was released and discharged from liability, and was not obligated or indebted to the appellant on account of any matters set out in appellant's complaint, but that all payments made by appellant were made by him after the execution of said contract of dissolution, and in discharge of the obligations thereby assumed by appellant.

The case was tried to the court, sitting without a jury. The court found the issues in favor of the respondent, and entered judgment of dismissal, from which an appeal was prosecuted to this court.

Appellant assigns and relies upon five alleged errors for a reversal of the judgment of the trial court. The briefs of the parties quite exhaustively argue the errors so assigned, and we have spent much time in examining the numerous cases cited in support of and against appellant's assignment of errors, and many others, and in the consideration of the many contentions made by appellant and respondent, respectively, in relation thereto, and conclude therefrom that two questions are presented which are controlling and decisive:

First: Under the Kroutinger lease, were appellant and respondent tenants in common, as contended by appellant? and

Second: Did appellant and respondent intend, by their contract of dissolution, that, as between themselves, respondent should be released and discharged from any further liability as a copartner, including the liability arising under and on account of the execution of the Kroutinger lease?

Now, as to the first question: The introductory recital in the Kroutinger lease indicates that Kroutinger must have been given to understand by the partners themselves that he was dealing with and leasing to appellant and respondent as copartners, and such recital further indicates that appellant and respondent themselves intended to contract, and understood that they were contracting, as copart-

ners, because the lease states that it is made by Kroutinger to "H. H. Bratton and Frank Morris, copartners doing business under the firm name and style of Bratton and Morris," and that this is true is further evidenced by the fact that Bratton and Morris, as copartners, with copartnership checks, paid the rent to Kroutinger until the lease was assigned.

And the record shows that the Kroutinger lease was negotiated by the copartnership; that the expenses incident thereto were paid with partnership funds; and, finally, that the profit made from the transaction was carried into the partnership profit and loss account as a part of the total partnership profit, and distributed to the partners. Consequently, the fact that the lease was signed "H. H. Bratton, Frank Morris, second parties," and that the firm name was not signed to the lease, is of no particular importance. Under these facts, it is clear that the Kroutinger lease was owned and held by the partnership as partnership property, and not by Bratton and Morris as tenants in common.

The determination of the second question, involving the intention of the parties as expressed in their contract of dissolution, depends upon the construction of the contract. The primary object of construction in contract law is to discover the intention of the parties, as it existed at the time the contract was made (Page on Contracts, second edition, sec. 2021), and, in effectuating that primary object, a contract must be construed as a whole, and in the light of the purposes for which it was intended (*Southern Ry. Co. v. Stearns Bros.*, (Circuit Court of Appeals, Fourth Circuit) 28 Fed. (2d) 560; *Clark v. Blackfoot Water Works*, 39 Ida. 304, 228 Pac. 326), and to accomplish those purposes.

The parties had been engaged in the mercantile business for ten years, as copartners. Such a relationship between business men is ordinarily close and intimate. It appears that the partnership had made a success of the business. At last, however, very substantial differences had arisen between the partners, differences so deep and fixed as to make necessary a complete and lasting dissolution of

the former pleasant and profitable partnership relation, clearly appears from the record. It becomes clear from an examination of the whole contract of dissolution, in the light of these circumstances, that it was the intention of the partners to fully, finally and forever settle all matters and every matter between themselves, and particularly the matter of releasing and discharging each other, as between themselves, concerning partnership liabilities. And that the partners gave particular attention to the matter of mutually releasing and discharging each other is strongly emphasized by the language employed in the eighth paragraph reading as follows:

"It is agreed that this agreement is a full and complete settlement of all matters and things between the respective parties, and they do mutually release and discharge each other from liability to the other on account of their previous association as copartners and on all other accounts."

It will be noted that the partners expressly agree that the final settlement arrived at and set forth in the contract is a full and complete settlement of *all matters* and *things* between them, and that they do mutually release and discharge each from *liability* to the other on account of their *previous association* as *copartners* and *on all other accounts*. The word "liability" is a broad term of large and most comprehensive significance. (*Price v. Parker,* 197 Mass. 1, 83 N. E. 823, 125 Am. St. 326; 36 C. J. 1050.) The parties did not limit the meaning of the word "liability," as used in the above-quoted eighth paragraph, and, consequently, we cannot do so. We cannot make a new contract for the parties.

The record bears ample evidence that both appellant and respondent are shrewd, keen, alert, practical business men. The contract involved the payment of quite a large sum of money from appellant to the respondent, and carried important provisions releasing and discharging respondent from liability on account of their previous associations as copartners, and on all other accounts. Therefore, it is quite certain that appellant gave the execution of that contract

careful consideration. Shortly before the contract was signed he had had an audit made of the books of the partnership for his special use and examination. That audit showed, and the books of the partnership showed, the Kroutinger lease transaction in full. In any examination of that audit, he would find a record of the lease, and the profit made therefrom. Further than that, the fifth paragraph carries provisions to the effect that appellant assumed and agreed to pay and save and hold respondent harmless from any and all obligations of the copartnership, and then follows the sentence: "together with and including any and all liabilities or leaseholds . . . . " Only two leases had ever been executed by the partnership, so that appellant's mind could hardly have been very severely taxed to remember both of them, and particularly so, when reading the contract his attention must necessarily have been directly called to *leaseholds*. And it must be remembered that the Kroutinger lease was for a term of five years, and the rental $650 per month, and further that by the terms of the lease it was provided that

"The second parties (referring to appellant and respondent) may assign this lease or sub-let any part of the premises provided that the second parties shall continue bound for the payment of rentals and the performance of all the obligations of the second parties with the same effect as if such assignment or sub-lease had not been made."

Appellant knew that regardless of the assignment of the Kroutinger lease he and respondent continued to be primarily bound and liable directly to Kroutinger for the payment of that rent money, and that the rent obligation of the lease mounted into thousands of dollars.

Under all of the circumstances, it is clear that, at the time the contract of dissolution was signed, appellant knew and understood that both the effect of the contract and the intention of the parties, as quite clearly and definitely expressed by the contract, was to "release and discharge each other from liability to the other on account of their previous association as copartners," including the Krou-

tinger lease, as well as "on all other accounts." Of course, if appellant had had the slightest reason for believing that Servey Stores Company would fail and, therefore, default in the payment of the rent under the Kroutinger lease, he, no doubt, would have endeavored to have that instrument excluded from the operation of the contract of dissolution, but evidently feeling perfectly safe about that, did not do so or, for that matter, even suggest it. And in that connection, it is significant that he made no claim that the respondent had not been released and discharged from all liability as to the Kroutinger lease until the Servey Stores Company defaulted and Kroutinger made demand for payment of accrued and accruing rent.

The appellant, by his complaint, based his right to recover from the respondent upon the sole ground that the Kroutinger lease was acquired by appellant and respondent as tenants in common, and this court having reached the conclusion that such lease was acquired and owned and held by appellant and respondent as copartners, and not as tenants in common, and that it was the intention of the parties to the contract of dissolution that appellant was to release and discharge and hold respondent harmless from all copartnership liability, including the Kroutinger lease, we deem it unnecessary to consider other contentions made by the parties or the cases cited in support of such contentions.

The judgment of the trial court is affirmed, with costs to respondent.

Budge, C. J., and Givens and Wernette, JJ., concur.

MORGAN, J., Concurring.—Four causes of action were stated in the complaint, against respondent, to recover half of amounts paid by appellant as rent for a building alleged to have been leased by the parties hereto, as tenants in common, and half of the amount of a judgment recovered against them by the lessor for an installment of rent, which judgment was paid by appellant. Respondent, in the an-

swer, denied that the parties jointly, or otherwise than as copartners, leased the building and pleaded the leasehold agreement. He alleged that appellant purchased his interest in the partnership and assumed and agreed to pay, and hold him harmless from, all partnership obligations including liability for rent for the building. A copy of the contract dissolving the partnership, quoted from in the foregoing opinion, was attached to and made a part of the answer and was introduced in evidence.

Judgment was for defendant and I concur in affirming it. While there is uncertainty in the lease, unexplained, as to whether the partnership was lessee or the members of it were lessees, the former is the case, for the evidence shows it was a partnership transaction, on the part of the parties hereto; that the benefits therefrom were partnership benefits and the obligation to pay rent was a partnership obligation.

The contract whereby the partnership was dissolved is free from ambiguity and the rule of construction relied on in the foregoing opinion has no application to it. The reason for dissolving the partnership is not within the issues and a discussion thereof is unnecessary to a decision of the case.